UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LUCILLE ORILLANEDA,                    :

                    Plaintiff,         :
                                            07 Civ. 3206 (RJH)(HBP)
     -against-                         :
                                            MEMORANDUM
THE FRENCH CULINARY INSTITUTE          :    OPINION AND ORDER
also known as "Bear Cove, LLC"
                                       :

                    Defendant.         :
----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          By notice of motion dated February 12, 2011 (Docket

Item 41), defendant moves for the entry of a protective order

relieving it from any obligation to respond to plaintiff's Third

Request for Production of Documents ("Pl.'s Third Request"), and

directing that discovery be deemed completed.

          For the reasons set forth below, defendants' motion is

granted in part and denied in part.

II.  <u>Facts</u>

    A.  Facts Alleged
       <u>in the Complaint</u>

       This is an employment discrimination action brought
under the Pregnancy Discrimination Act, the Family Medical Leave
Act and parallel state and local laws.  Plaintiff alleges that
she began working for defendant as a temporary employee in 1999,
reconciling bank accounts and managing accounts receivable
(Complaint, dated Apr. 19, 2007 (Docket Item 1), ("Compl.") ¶¶ 1-
2, 15).  In January 2000, plaintiff accepted a position with
defendant as an account manager "on a consultation basis" and was
hired as a full-time employee in June 2001 (Compl. ¶¶ 16, 18).
Plaintiff is a certified public accountant and was appointed to
be defendant's controller in July 2002 (Compl. ¶ 21).  In the
fall of 2004, plaintiff underwent <u>in</u> <u>vitro</u> fertilization ("IVF")
procedures in an effort to conceive; plaintiff informed her
supervisor that she was undergoing this procedure and was absent
from work for five days in order to do so (Compl. ¶ 23).  Plain-
tiff did not conceive at that time (Compl. ¶ 24).

       Plaintiff claims that after her first IVF cycle,
several of her subordinates began to make comments about her
efforts to conceive which plaintiff found upsetting (Compl.

¶ 28).  In June 2005, plaintiff told her superiors that she would need to take another week off to undergo a second round of IVF treatment (Compl. ¶ 31).  After plaintiff's first week off, she informed her superiors that she would need to be absent for a second week as a result of complications that arose during the IVF treatment (Compl. ¶¶ 34-35).

Plaintiff's second IVF cycle was successful, and plaintiff returned to work on July 18, 2005 (Compl. ¶¶ 37-38).  Upon her return, however, plaintiff was fired (Compl. ¶¶ 38-39).  He supervisor, Gary Apito, was initially reluctant to provide plaintiff with a reason for her termination (Compl. ¶ 39).  When pressed, however, he claimed that plaintiff was fired because she did not get along with her fellow managers, was disliked by the staff and that management no longer had confidence in plaintiff's work (Compl. ¶ 40).  Plaintiff alleges that defendant's human resources manager subsequently told her that she should not feel badly about getting fired because she had successfully conceived and had gotten what she wanted (Compl. ¶ 46).  Plaintiff was subsequently replaced by an individual who was not pregnant (Compl. ¶ 49).

Defendant denies all the material allegations of the complaint except plaintiff's employment with defendant and her termination in 2005.

B.   Defendant's
     Assertion of Facts
     <u>Concerning Discovery</u>

Plaintiff served her first two sets of discovery requests on July 19, 2007 and December 3, 2010 (Defendant's Memorandum of Law in Support, dated Feb. 14, 2011 (Docket Item 42), ("Def.'s Mem. in Supp.") at 2, <u>citing</u> Plaintiff's First Request for Production of Documents, Defendant's Response thereto, Plaintiff's Second Request for Production of Documents and Defendant's Response thereto ("Def.'s Second Response"), attached to Declaration of Celena Mayo, dated Feb. 14, 2011 (Docket Item 68), ("Mayo Decl.") as Exs. D, E, F, G respectively).  Defendant asserts that it responded to these requests and notified plaintiff on July 25, 2008 that it possessed electronic repositories which it had not searched (Def.'s Mem. in Supp. at 3, <u>citing</u> Conference Transcript, dated Sept. 11, 2008 and attached to Mayo Decl. as Ex. K).  Following a subsequent conference during which this issue was discussed, defendant "conducted extensive efforts to locate all relevant ESI within its possession, custody or control[,]" a process it claims was "well documented" by Phil Engert, Vice President of Information Technology at the French Culinary Institute (Def.'s Mem. in Supp.

4

at 3, <u>citing</u> Declaration of Phil Engert, dated Oct. 18, 2010 and
attached to Mayo Decl. as Ex. M ("Engert Decl.")).

   Defendant claims that it has produced 5,085 pages of
discovery in response to plaintiff's first two sets of requests,
including ESI materials from defendant's "live network" that were
dated prior to July 17, 2007, and ESI from a backup tape which
captured information on defendant's computer systems at the time
of plaintiff's termination in 2005 (Def.'s Mem. in Supp. at 3,
<u>citing</u> Defendant's Response to Plaintiff's First Request, at-
tached to Mayo Decl. as Ex. E; Def.'s Second Response; Letter of
Celena Mayo to the Honorable Henry Pitman, dated Jan. 20, 2011
and attached to Mayo Decl. as Ex. O).  After the 2005 tape was
restored, defendant reviewed the "Email boxes and documents" of
the individuals identified in my May 28, 2010 Order, as well as
their "present network email boxes and documents" and email
archives.  Defendant conducted these searches using the "search
terms and timelines directed by the Court" (Def.'s Mem. in Supp.
at 4).  Defendant also claims it has produced a copy of every
email and the attachments thereto from plaintiff's "network
Outlook folder" and copies of Outlook calendars for custodians
"identified as relevant to Plaintiff's underlying allegations"
(Def.'s Mem. in Supp. at 3-4, <u>citing</u> Def.'s Second Response;

Letter of Celena Mayo to Elizabeth Mason, dated Jan. 21, 2010 and attached to Mayo Decl. as Ex. P).

Defendant also notes that plaintiff has taken several depositions, including those of Engert, Gary Apito, defendant's President and Chief Operating Officer, Cindy Whitaker, defendant's Human Resources Director, and Yannick Guerin, Leslie Scotland and Christopher Papagni, plaintiff's former co-workers (Def.'s Mem. in Supp. at 5).

Defendant asserts that Engert provided plaintiff with a detailed account of defendant's search procedures and information systems in his declaration and at his December 2010 deposition.[1] Specifically, he explained that defendant's "backup system is intended purely for disaster-recovery" and creates a snapshot of the mail server database as it exists at the moment the backup storage is created (Def.'s Mem. in Supp. at 6). Defendant asserts that nightly tapes are routinely reused and tapes from the time periods relevant to this litigation were re-written before defendant had a reasonable anticipation of litigation (Def.'s Mem. in Supp. at 6, <u>citing</u> Engert Decl. ¶¶ 1-6). Defendant notes that it also maintains monthly backup tapes which require "a considerable amount of pre-processing to be rendered

---

[1] Neither party has provided me with any portion of the transcript of this deposition.

searchable" (Def.'s Mem. in Supp. at 6, citing Engert Decl. ¶¶ 6-8).  In total, defendant has 96 backup tapes, restoration of which would cost $124,800.  Defendant also notes that it searched emails using Microsoft Outlook's 2003 "client search functions[,]" which it claims was tedious and time consuming (Def.'s Mem. in Supp. at 7, citing Engert Decl. ¶¶ 9-11).

        Defendant further notes that after it represented to the court that these tapes were not readily searchable without up to ten combined hours of restoration and processing per tape, I issued an Order directing that defendant produce certain emails "'to the extent they exist on media other than back-up tapes'" (Def.'s Mem. in Supp. at 8, citing November 2008 Order, dated Nov. 24, 2008 and attached to Mayo Decl. as Ex. I, ¶ 8).  Defendant also notes that my May 2010 Order directed that plaintiff narrow the discovery requests in which she used the terms "'all documents'" or "'all email systems'" (Def.'s Mem. in Supp. at 8, citing May 2010 Order, dated May 28, 2010 and attached to Mayo Decl. as Ex. J, at 38-39).

        C.  The Discovery
            Requests in Issue

        Plaintiff's Third Request for the Production of Documents consists of eleven items, two of which (Items 1 and 10)

have a number of sub-parts (Mayo Decl., Ex. H).  Among other
things, plaintiff seeks a list of "backup sets" (Item 1), copies
of all "relevant disks, backup tapes, hard drives, CDs, DVDs, an
[sic] [p]roduce exact copies of all relevant disks, backup tapes,
hard drives, CDs, DVDs, and other removable media containing all
ESI requested in this action from January 1, 2003 to present
date" (Item 2), backup tape drives, email servers, hard drives
from specified desktop and laptop computers (Item 3), all litiga-
tion holds and related information (second Item 3[2]), organiza-
tional charts for defendant's information technology department
(Item 4), a graphic representation of defendant's computer
network (Item 5), disaster recovery and document retention plans
(Item 6), descriptions of locations used by certain individuals
for the storage of emails and word processing documents (Items 8
and 9[3]) and information concerning the computer hardware and
applications used by certain identified individuals (Item 10).

---

[2]Plaintiff's Third Request for Production of Documents
contains two items that are both designated number 3.

[3]Item 7 is redundant of Item 2.

III.  <u>Analysis</u>

    A.  <u>Applicable Legal Principles</u>

       Fed.R.Civ.P. 26(c) authorizes a federal court, for good cause, to issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense."  The rule serves in part to protect parties' privacy interests.  <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 35 n.21 (1984); <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1114 n.10 (3d Cir. 1986).  Rule 26(c) "allows for the crafting of appropriate relief, including 'that the disclosure or discovery may be had only on specified terms and conditions.'" <u>Flaherty v. Seroussi</u>, 209 F.R.D. 300, 304 (N.D.N.Y. 2002), <u>quoting</u> Fed.R.Civ.P. 26(c).  "Protective orders can take a variety of forms in order to fit the circumstances of the case." <u>Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 07 Civ. 2014 (SWK), 2008 WL 199537 at *2 (S.D.N.Y. Jan. 22, 2008) (Kram, D.J.).

       The party seeking a protective order bears the burden of establishing that good cause for the order exists.  <u>Gambale v. Deutsche Bank AG</u>, 377 F.3d 133, 142 (2d Cir. 2004); <u>Dove v. Atl. Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992); <u>Penn Group, LLC v. Slater</u>, 07 Civ. 729 (MHD), 2007 WL 2020099 at *13 (S.D.N.Y. June

13, 2007) (Dolinger, M.J.); Condit v. Dunne, 225 F.R.D. 113, 115 (S.D.N.Y. 2004) (Leisure, D.J.).  Good cause is established by "demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., supra, 785 F.2d at 1121; see In re Terrorist Attacks on Sept. 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (Casey, D.J.) ("Ordinarily, good cause [for a protective order] exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.") (internal quotations and citations omitted); Koster v. Chase Manhattan Bank, 93 F.R.D. 471, 479 (S.D.N.Y. 1982) (Goettel, D.J.).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  Moreover, the harm must be significant, not a mere trifle." Schiller v. City of New York, 04 Civ. 7922 (KMK)(JCF), 04 Civ. 7921 (KMK)(JCF), 2007 WL 136149 at *5 (S.D.N.Y. Jan. 19, 2007) (Francis, M.J.), quoting Cipollone v. Liggett Group, Inc., supra, 785 F.2d at 1121; accord Loussier v. Universal Music Group, Inc., 214 F.R.D. 174, 177 (S.D.N.Y. 2003) (Ellis, M.J.).

> The showing necessary to establish such potential harm
> depends upon the type of harm being threatened and the
> type of order being sought.  At the least, the moving
> party must provide the court with information from
> which it can reasonably conclude that the nature and
> magnitude of the moving party's interest are such that
> protective intervention by the court is justified.

Koster v. Chase Manhattan Bank, supra, 93 F.R.D. at 479 (internal
quotations and citations omitted).

　　　　Although the burden is on the movant to establish good
cause for the entry of a protective order, ultimately, the court
ultimately must weigh the interests of both sides in fashioning
an order. Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y.
2005) (Gorenstein, M.J.) ("'[U]nder Rule 26(c), the appropriate-
ness of protective relief from discovery depends upon a balancing
of the litigation needs of the discovering party and any counter-
vailing protectible interests of the party from whom discovery is
sought.'"), quoting Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496
(S.D.N.Y. 1985) (Dolinger, M.J.); Savitt v. Vacco, 95-CV-1842
(RSP/DRH), 95-CV-1853 (RSP/DRH), 1996 WL 663888 at *4 (N.D.N.Y.
Nov. 8, 1996) ("A court must strike a balance between plaintiffs'
'desire for full disclosure of relevant information against the
defendant[s'] desire to preserve the privacy of [their] employ-
ees.'"), quoting Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590,
601 (2d Cir. 1986) (order in sex discrimination employment class
action giving plaintiffs' counsel access to defendants' employ-
ees' personnel files but precluding access by plaintiffs them-
selves was "a proper attempt to balance the plaintiffs' desire
for full disclosure of relevant information against the defen-
dant's desire to preserve the privacy of its employees"); Koster

11

v. Chase Manhattan Bank, supra, 93 F.R.D. at 479 (Once the movant
has established good cause for a protective order, "the court
should consider other factors that may militate against issuing a
protective order [such as] whether the order will prevent the
threatened harm, whether there are less restrictive means of
preventing the threatened harm, the interests of the party
opposing the motion, and the interests of the public.").

Under Rule 26(c), the trial court has "broad
discretion . . . to decide when a protective order is appropriate
and what degree of protection is required." Seattle Times Co. v.
Rhinehart, supra, 467 U.S. at 36; see also Dove v. Atl. Capital
Corp., supra, 963 F.2d at 20 ("[T]he grant or denial of a protec-
tive order lies within the sound discretion of the district
court."); Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973)
("The grant and nature of protection is singularly within the
discretion of the district court."); Condit v. Dunne, supra, 225
F.R.D. at 116.

B.  Defendant's Failure
     to Certify its
     Attempts at Resolution

Plaintiff first argues that defendant's motion should
be denied because defendant failed to certify that it conferred
or attempted to confer with plaintiff in good faith in an effort

to resolve this discovery dispute.  In support, plaintiff cites

Fredyl v. Meringolo, 09 Civ. 7196 (BSJ)(KNF), 2011 WL 134972 at

*3 (S.D.N.Y. Jan. 7, 2011) (Fox, M.J.), in which the court held

> Rule 26(c)'s explicit language is mandatory:  "The
> motion must include a certification that the movant has
> in good faith conferred or attempted to confer."
> Fed.R.Civ.P. 26(c) (emphasis added).  However, "[a]t
> its discretion the court may waive strict compliance
> with the conference requirements" and consider the
> motion on the merits, where failure to do so "may
> unduly prejudice the movant."  Pulsecard, Inc. v.
> Discover Card Servs., 168 F.R.D. 295, 302 (D. Kan.
> 1996).  Despite the defendants' failure to certify, and
> to avoid any remote possibility of prejudice, the Court
> considers the merits of their motion

(Pl.'s Mem. in Opp. at 5-7).  Defendant in this case did not

submit such a certification with its motion.  It instead points

to Mayo's Declaration in which she states "[o]ver the last

several months prior to filing this motion, the undersigned

engaged in numerous discussions with Plaintiff's counsel regard-

ing discovery in this lawsuit.  All attempts to communicate with

Plaintiff's counsel regarding discovery have proved futile" (Mayo

Decl. ¶ 8).  While I do not find that this statement completely

satisfies Rule 26(c)'s mandate of certification concerning the

parties' efforts to resolve the particular discovery dispute at

issue, I choose to rule on the merits of this motion, especially

in light of the fact that defendant discussed its intention to

file a motion for a protective order in response to plaintiff's
Third Request at a conference before me on February 3, 2011.

    C.  Defendant's Claim
       that Plaintiff Seeks
       Irrelevant Materials

      While defendant asserts numerous objections to plain-
tiff's discovery requests, the parties' central dispute is
whether plaintiff is entitled to discovery concerning the manner
in which defendant has searched for and maintained its documents
internally.  Though defendant highlights request numbers 1, 5 and
10, it argues that plaintiff's Third Request in its entirety
seeks information concerning defendant's search procedures and
information systems, which it claims are irrelevant (Def.'s Mem.
in Supp. at 9, citing Pl.'s Third Request, dated Dec. 23, 2010
and attached to Mayo Decl. as Ex. H).  In principal part,
defendant argues that plaintiff is not entitled to such discovery
without demonstrating that there is reason to believe that
additional, relevant information exists which defendant did not
produce (Defendant's Reply Memorandum of Law, dated Mar. 25, 2011
(Docket Item 52), ("Def.'s Mem. in Reply") at 1, citing Hubbard
v. Potter, 247 F.R.D. 27, 29 (D.D.C. 2008); Pl.'s Mem. in Opp. at
10).

Discovery concerning the search and maintenance of a party's information systems may be appropriate in certain circumstances. The Honorable John Facciola, United States Magistrate Judge for the District of Columbia,[4] held in Hanan v. Corso, No. CIV.A. 95-0292 (TPJ)(JMF), 1998 WL 429841 at *7 (D.D.C. Apr. 24, 1998), that when a defendant had provided several declarations concerning its efforts to comply with plaintiff's discovery requests, the plaintiff was not entitled to further discovery concerning this process because plaintiff did not "specify what additional information the new discovery will yield which these declarations [did] not contain." Hanan v. Corso, supra, 1998 WL 429841 at *7. Judge Facciola was further persuaded that such discovery was not appropriate in the case before him because plaintiff did not explain how "discovery about discovery" met the standards set forth in Rule 26(b)(1), and because the case was already three years old. In a more recent case addressing the same issue, Judge Facciola concluded that:

> Courts supervising discovery are often confronted by
> the claim that the production made is so paltry that

---

[4]Defendant notes that Judge Facciola is an advisory board member of the Sedona Conference. The Sedona Conference defines itself as a nonprofit, 501(c)(3) research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights. See The Sedona Conference Mission, http://thesedonaconference.org/content/tsc_mission/show_page_html.

> there must be more that has not been produced or that
> was destroyed.  Speculation that there is more will not
> suffice; if theoretical possibility that more documents
> exist sufficed to justify additional discovery, discov-
> ery would never end.

Hubbard v. Potter, supra, 247 F.R.D. at 29; citing, inter alia,
Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 313 (S.D.N.Y. 2003)
(Scheindlin, D.J.).

Indeed, the search and maintenance of a party's infor-
mation systems may be relevant when a party can "'point to the
existence of additional responsive material'" or when the docu-
ments already produced "permit a reasonable deduction that other
documents may exist or did exist and have been destroyed."
Hubbard v. Potter, supra, 247 F.R.D. at 29; see also Preskoff v.
Faber, 244 F.R.D. 54, 63 (D.D.C. 2007) (the combination of
plaintiff's testimony about his email use, the existence of at
least one email proving this use, and the "curious results" of
defendant's search led court to order further discovery).
However, plaintiff has made no such showing in the present case.

In fact, plaintiff has not identified any specific
reasons for believing that defendant's production is deficient.
Instead, plaintiff mostly argues in generalities and outlines the
legal authority governing discovery disputes.  For example,
plaintiff notes that Rule 26 allows for broad discovery concern-
ing "'any matter, not privileged, that is relevant to the claim

16

or defense of any party'" (Pl.'s Mem. in Opp. at 5, <u>citing</u>

Fed.R.Civ.P. 26(b)(1) <u>and</u> <u>Daval Steel Products v. M/V Fakredine</u>,

951 F.2d 1357, 1367 (2d Cir. 1991)), <u>superceded</u> <u>by</u> Fed.R.Civ.P.

26(b)(1) <u>as</u> <u>amended</u>, and claims that this rule encompasses

discovery of "'any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may

be in the case'" (Pl.'s Mem. in Opp. at 5, <u>quoting</u> <u>Maresco v.</u>

<u>Evans Chemetics</u>, 964 F.2d 106, 114 (2d Cir. 1992)).  Plaintiff

further claims that discovery of "the existence, description,

nature, custody, condition, and location of any documents or

other tangible things and the identity and location of persons

who know of any discoverable matter" is appropriate under these

standards (Pl.'s Mem. in Supp. at 5, <u>quoting</u> Fed.R.Civ.P.

26(b)(1)).[5]

     Plaintiff also outlines various legal standards govern-

ing the preservation and production of ESI, and counsel's obliga-

---

[5]Plaintiff argues that request numbers 2, 3 and 7, have been "stayed" (Pl.'s Mem. in Opp. at 1-2, <u>citing</u> Letter of Elizabeth Mason, dated Feb. 8, 2011 and attached to Declaration of Elizabeth Mason, dated Feb. 28, 2010 (Docket Item 50), ("Mason Decl.") as Ex. B ("Mason Letter")).  Defendant maintains that plaintiff has not withdrawn these requests but only stayed them "for the time being" (Def.'s Mem. in Reply 9, <u>citing</u> Mason Letter).  Because plaintiff is not presently pursuing these requests, I find that issues concerning them are not ripe for review.  I also note that there are two requests numbered 3, but it appears plaintiff has only stayed the first of those requests (Pl.'s Mem. in Opp. at 3).

tion to become familiar with its client's information systems (Pl.'s Mem. in Opp. at 13-14, citing Conor Crowley et al., The Sedona Conference Commentary on Legal Holds, The Sedona Conference Working Group Series, August 2007, http://www. thesedonaconference.org/content/miscFiles/Legal_holds.pdf; Phoenix Four, Inc. v. Strategic Resources Corp., 05 Civ. 4837 (HB), 2006 WL 1409413 at *6-*7 (S.D.N.Y. May 23, 2006) (Baer, D.J.); Model Rules of Professional Conduct Rule 1.1 (2002); Thompson v. Jiffy Lube Int'l, Inc., No. 05-1203-WEB, 2006 WL 3388502 at *2 (D. Kan. Nov. 21, 2006); Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430-34 (S.D.N.Y. 2004) (Scheindlin, D.J.); The Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2010) (Scheindlin, D.J.).  However, other than general statements including "the parties dispute whether Defendant properly pre-served, maintained, searched for and produce[d] the subject information," plaintiff does not apply these legal standards to specific alleged actions of defendant (Pl.'s Mem. in Supp. at 14).

        Plaintiff's general statements concerning defendant's production do not identify the ways in which this production was deficient.  For instance, although plaintiff argues that defen-dant did not comply with plaintiff's document requests and orders

of the court (Def.'s Mem. in Reply at 6, <u>citing</u> Pl.'s Mem. in
Opp. at 2), she does not state how defendant failed to comply
with these obligations, or which obligations she believes they
violated.[6]  Moreover, plaintiff has deposed Engert about defen-
dant's search procedures and information systems and he has
submitted a declaration addressing these subjects.  Plaintiff has
not indicated that his testimony was deficient or that it sug-
gested defendant's search was improper.

        Plaintiff also claims that this information should have
been produced pursuant to Rule 26(b)(2)(B) requiring that parties
identify "any inaccessible sources it does not intend to search"
because defendant claims "some of the information resides in an
inaccessible storage location" (Pl.'s Mem. in Opp. at 15).
Plaintiff does not indicate when defendant made this assertion
and it is not clear to me from the record.  To the extent plain-
tiff refers to defendant's claim that some information is stored

---

[6]Defendant argues that plaintiff has not contested that
defendant has fully complied with its discovery obligations
because plaintiff states "Defendant claims that it has produced a
number of documents in this case already.  That fact is entirely
irrelevant to the discovery issues at hand" (Def.'s Mem. in Reply
at 6-7, <u>citing</u> Pl.'s Mem. in Opp. at 10).  I do not interpret
this statement to mean that there is no dispute as to whether
defendant complied with its discovery obligations, but that
plaintiff does not believe that the fact that defendant has
produced some documents relieves it of its obligation to respond
to the requests at issue.

on backup tapes which are costly and burdensome to restore, plaintiff has stayed her requests for that information (Pl.'s Mem. in Opp. at 4). Moreover, plaintiff's claim that she is "entitled to know all of the locations where [defendant] maintains relevant ESI, the form in which it is maintained, the custodians of the information, the accessibility of the information, whether copies exist, the size of the subject information, what is required to retrieve the subject information, and Defendant's efforts to preserve and maintain the subject information" is unfounded (Pl.'s Mem. in Opp. at 15-16, citing Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 261 n.10 (D. Md. 2008)). Plaintiff has not explained why she needs this information for "all relevant ESI" in order to determine whether a particular storage location is truly inaccessible.

Plaintiff also claims that each of her requests are relevant because they are crucial to discern whether defendant's search efforts were "adequate" and whether defendant should be sanctioned (Pl.'s Mem. in Opp. at 11, 17). To this end, plaintiff seeks information concerning the location of relevant ESI (Pl.'s Mem. in Opp. at 11, citing Pl.'s Third Request ¶¶ 1, 5, 8, 9), information concerning defendant's "obligations and representations regarding its duty to preserve, maintain, collect, and produce" ESI (Pl.'s Mem. in Opp. at 11, citing Pl.'s Third

Request ¶¶ 3, 6), and documents containing the organizational
chart of defendant's IT department (Pl.'s Mem. in Opp. at 11,
citing Pl.'s Third Request ¶ 4).  Plaintiff argues that these
requests address the legal obligations of parties in discovery,
including the duty to maintain and search for relevant informa-
tion, which she claims is "particularly necessary in the elec-
tronic age and certainly in discrimination cases, where Plain-
tiffs frequently seek to use e-mails as evidence of discrimina-
tory behavior" (Pl.'s Mem. in Opp. at 12, citing Zubulake v. UBS
Warburg LLC, 220 F.R.D. 212, 217-19 (S.D.N.Y. 2003) (Scheindlin,
D.J.); Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D.
543, 557-58 (N.D. Cal. 1987); Antioch Co. v. Scrapbook Borders,
Inc., 210 F.R.D. 645, 652 (D. Minn. 2002)).  However, the author-
ities cited above at pages 15-16 teach that a plaintiff is not
entitled to conduct discovery that is solely relevant to the
sufficiency of the adversary's document production without first
identifying facts suggesting that the production is deficient.
In connection with the instant motion, plaintiff has not identi-
fied such facts.

          Plaintiff's purported discovery expert, Wai Yip,
similarly fails to identify any specific deficiencies in defen-
dant's production.  Yip states that he reviewed plaintiff's
requests and found they were "reasonable, relevant, and will

prove to be tremendously helpful to the Court to addressing whether an adequate search was performed by Defendant" (Declaration of Wai Yip, dated Feb. 28, 2011 (Docket Item 49), ("Yip Decl.") ¶ 8).  Yip further opines that these requests are appropriate under state and federal law concerning electronic discovery, and pursuant to the Sedona Conference "Jumpstart Outline" which he claims provides "questions to ask your client and your adversary to prepare for Preservation, Rule 26 Obligations, Court Conferences and Requests for Production" (Yip Decl. ¶¶ 9-10, citing The Sedona Conference Jumpstart Outline, attached to Yip Decl. as Ex. B).  However, Yip's opinion that these requests comply with the law has no bearing on their relevance.

Likewise, Yip's description of the ways in which each individual request seeks information that would be helpful to plaintiff does not make them relevant in the absence of any specific reasons for believing that defendant's production to date is deficient (Yip Decl. ¶¶ 11-17).  Moreover, although Yip notes that he was present at plaintiff's deposition of Engert, he never claims that Engert's testimony suggests that defendant's searches were deficient (Yip Decl. ¶ 3).

Finally, plaintiff argues that defendant has not satisfied its burden for obtaining a protective order because it has made only broad allegations of harm (Pl.'s Mem. in Opp. at 8,

citing Wiwa v. Royal Dutch Petroleum Co., 96 Civ. 8386

(KMW)(HBP), 2006 WL 2724024 at *2 (S.D.N.Y. Sept. 22, 2006)

(Pitman, M.J.); Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 (1981);

Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 71 (S.D.N.Y.

2010) (Pitman, M.J.)), and claims that defendant must demonstrate

that disclosure will cause a "'clearly defined and serious

injury'" (Pl.'s Mem. in Opp. at 9, quoting Allen v. City of New

York, 420 F. Supp. 2d 295, 302 (S.D.N.Y. 2006) (Gorenstein,

M.J.)).  Plaintiff relies on my decision in Wiwa to support this

argument, stating that defendant must demonstrate "how, despite

the broad and liberal construction afforded the federal discovery

rules, each request is not relevant or how each question is

overly broad, unduly burdensome or oppressive by submitting

affidavits or offering evidence revealing the nature of the

burden" (Pl.'s Mem. in Opp. at 9).  However, plaintiff's charac-

terization of my decision in Wiwa is not accurate.  In that case,

the defendant sought a protective order against "plaintiffs'

continued harassment"; the motion was not directed toward the

plaintiffs' document requests.  Wiwa v. Royal Dutch Petroleum

Co., supra, 2006 WL 2724024 at *1.  In the instant action,

defendant, while often not addressing its arguments to particular

requests, seeks a protective order against plaintiff's Third

Request in its entirety, largely because these requests seek

23

information related to defendant's internal search procedures and information systems, which it deems irrelevant.[7]

Therefore, based on the present record, I find that plaintiff's requests for discovery of defendant's search proce-dures and information systems do not seek relevant information. Discovery concerning these areas may be appropriate in certain circumstances, but it is not appropriate in this case unless and until plaintiff makes a specific showing that  defendant's production is deficient.

Accordingly, I grant defendant's motion for a protec-tive order that it is not obligated to respond to plaintiff's Third Request.  I will not, however, direct that all discovery be deemed completed because defendant has not attempted to demon-strate why such a sweeping directive is warranted at this time.

Defendant has set forth several other grounds for its motion, including claims that plaintiff's requests were overly broad, unduly burdensome, call for the creation of documents, and

----

[7]Plaintiff also argues that Rule 34(a) mandates that defendant identify potential sources of discoverable information which it will not search (Pl.'s Mem. in Opp. at 17).  Defendant reports that it did so on July 25, 2008 and this issue was addressed during a subsequent discovery conference (Def.'s Mem. in Supp. at 3, citing Conference Transcript, dated Sept. 11, 2008 and attached to Mayo Decl. as Ex. K).  Plaintiff has not responded to defendant's representation nor has she specified any other instances in which defendant failed to search particular sources without properly identifying them.

are duplicative.  Because I find that plaintiff's requests seek irrelevant information, I do not address these additional arguments.

VI.  Conclusion

For all the forgoing reasons, defendant's motion for a protective order is granted in part and denied in part.  I direct that defendant is not obligated to respond to plaintiff's Third Request.  However, I deny defendant's motion to the extent it requests I direct that all discovery is completed.  To the extent plaintiff requests defendant pay the legal fees and costs associated with this motion, that motion is also denied (Pl.'s Mem. in Opp. at 4).

Dated:  New York, New York
        September 19, 2011

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Elizabeth Mason, Esq.
Elizabeth A. Mason, LLP
20th Floor
45 Rockefeller Plaza
New York, New York  10111

25

Celena Mayo, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 East 42nd Street
New York, New York  10017